UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21527-CIV-HUCK/SIMONTON

ERIN LYNN BAKER,

    Plaintiff,

vs.

CARNIVAL CORPORATION,
CARNIVAL CRUISE LINES,
DENIE HIESTAND and
SHELLEY HIESTAND,

    Defendants.
_____/

## ORDER ON CARNIVAL'S MOTION TO DISMISS

THIS MATTER is before the Court upon Defendant Carnival's Motion to Dismiss Plaintiff's Complaint [D.E. #12]. For the reasons set forth below, Defendant Carnival's Motion to Dismiss is GRANTED IN PART, DENIED IN PART.

### Background

Defendant Carnival Corporation ("Carnival") is a Panamanian company engaged in the business of owning, operating and conducting carriage of passengers for hire aboard luxury cruise vessels. Pl. Cmplt. at ¶ 10. Plaintiff Erin Lynn Baker ("Baker") booked and paid for passage as a guest on the Carnival ship "Destiny." *Id.* at ¶ 11. On June 12, 2005 she boarded the "Destiny" in San Juan, Puerto Rico along with other passengers to celebrate the wedding of a friend. Among the other passengers traveling on the Destiny for the wedding were Denie and Shelley Hiestand (the "Hiestands"). *Id.* at ¶ 12.

On June 16, 2005, while on board the "Destiny," Baker and some friends were in one of the ship's bars, tended by Destiny crewmembers. *Id.* at ¶ 13. They were joined by Mr. Hiestand, and alcoholic drinks were served to all. *Id.* When taking another order of drinks, the waiter asked

whether he should make the drinks stronger and Mr. Hiestand replied in the affirmative. *Id.* Ms. Hiestand also joined the group at some point. *Id.*

Baker alleges that the Hiestands seem to have added something to her drink, already made stronger by the waiter, which caused her to be rendered semiconscious. *Id.* at ¶ 14. The Hiestands then picked up and carried the "obviously impaired [] Baker from the bar area, in full view of Destiny crewmembers who did nothing to protect or promote" Baker's safety. *Id.* at ¶ 15. The wait staff knew that the Hiestands were taking Baker to their own cabin. *Id.* In the Hiestands' cabin, Baker was, for several hours, sexually assaulted, abused and raped by the two of them. *Id.* at ¶ 16.

Baker eventually regained consciousness and struggled away from the Hiestands' cabin to her own. *Id.* at ¶ 17. Baker experienced extreme distress knowing she had been sexually violated, internal pain and serious concern about whether she had contracted sexually transmitted diseases from the Hiestands. *Id.*

After waiting several hours for the ship's infirmary to open, Baker was attended by the nurse and physician on duty, who performed only a perfunctory examination and prepared a rape kit. *Id.* at ¶ 18. The nurse and physician did not take a complete history from Ms. Baker and did not conduct tests to confirm that Baker had been drugged. They also provided no counseling to Baker. *Id.*

Baker then provided a lengthy written statement to the ship's security and turned over two notes written to her by Ms. Hiestand following the assault. *Id.* at ¶ 19. The security department did not interview the Hiestands although they knew the Hiestands were leaving the ship to stay in Aruba. *Id.* A security officer advised Baker that the FBI would be given the materials collected on board and would investigate the matter. *Id.*

Baker disembarked in Aruba on June 17, 2005 to return home, and left her contact information with the ship's security officer so that the FBI could contact her to further investigate the matter. *Id.* at ¶ 20. No one advised Baker that if she disembarked in Aruba, before returning to

2

the home port of Puerto Rico, an investigation by the authorities would be impaired. *Id.* Yet Carnival later claimed that her leaving precluded an investigation. *Id.* Carnival later claimed it lost the rape kit. *Id.*

On June 14, 2006 Baker filed this Complaint against Carnival and the Hiestands. Baker brings claims against Carnival for negligence and breach of contract. Carnival has filed the instant motion to dismiss.

## Standard for Motion to Dismiss

In reviewing a motion to dismiss, all well-pleaded facts in a plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. *Id.* at 47. All that is required is a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Analysis

Carnival seeks to dismiss Baker's Complaint on three grounds: (1) that it owed no duty to Baker; (2) that the contract has no explicit provision guaranteeing safe passage; and (3) that punitive damages and attorney's fees are not recoverable under general maritime law. Each of these arguments will be addressed in turn.

### I. Applicable Law

Defendant's Motion to Dismiss is governed by federal maritime law because the alleged

3

incident occurred on board a ship upon navigable waters. *See Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir. 1990); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp. 2d 1367, 1373 (S.D. Fla. 2002). In the absence of applicable maritime law, courts may apply state law, so long as the application of state law "does not frustrate the national interest in having uniformity in admiralty law." *Doe v. Celebrity Cruises*, 145 F.Supp.2d 1337, 1340-41 (11th Cir. 2001).

## II. Negligence

To prove negligence, a plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages. *Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992).

Under general maritime law a shipowner owes passengers the duty of exercising reasonable care under the circumstances. *Kemarec v. Compagnie General Transatlantique*, 358 U.S. 625, 632 (1959). However, "a shipowner is not an insurer of its passengers' safety . . . . There must be some failure to exercise due care before liability may be imposed." *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988). The standard of reasonable care generally requires that a carrier have actual or constructive notice of the risk-creating condition. *Keefe v. Baham Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Where it is alleged, however, that defendant created an unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence. *Rockey v. Caribbean Cruise, Ltd.*, 2001 WL 420993 at *4-5 (S.D. Fla. 2001) (citations omitted). The question becomes whether the defendant created an unsafe or foreseeably hazardous condition. *Id.* at *5.

Carnival argues that it did not violate any duty owed to Baker because it has no obligation to continually monitor the safety of its passengers, only a duty to warn of dangers which the carrier knew or reasonably should have known existed. Carnival maintains that since Baker does not allege that Carnival knew or should have known of the alleged danger, i.e., that the Hiestands would drug

4

Baker and sexually abuse her, there is no cause of action against Carnival for Baker's injuries. Furthermore, Carnival argues, Carnival had no duty to warn Baker of dangers that are apparent and obvious such as the danger of drinking too much. *See Isbell v. Carnival Corp.*, 2006 WL 3360382 at *4 (S.D. Fla. 2006) (cruise line operator not required to warn of dangers that are open and obvious).

The Court finds that, taken as true, Baker's allegations state a cause of action for breach of Carnival's duty to exercise reasonable care for the safety of its passengers. Specifically, Baker alleges that Carnival created a foreseeably hazardous situation when its wait staff suggested and prepared stronger drinks for Baker and then knowingly allowed the Hiestands to carry the impaired Baker from the bar area to their cabin. Pl Cmplt. at ¶¶ 29(a) and (b). Baker claims that as a result she was sexually assaulted by the Hiestands and suffered physical and emotional damages. Pl. Cmplt. at ¶¶ 25, 30. These allegations meet the basic elements of a negligence claim and are sufficient to overcome Carnival's motion to dismiss the negligence claim. *See, e.g. Hall v. Royal Caribbean Cruises, Ltd.*, 888 So.2d 654 (Fla. 3d DCA 2004) (passenger's allegation that he was injured after being served alcohol by vessel's employees past the point of intoxication stated cause of action against cruise ship).

Baker also advances several alternative theories of negligence. First, Baker alleges that Carnival was negligent because its medical crewmembers failed to use proper care in attending to Baker's injuries and in safeguarding Baker's rapekit. Pl. Cmplt. at ¶ 29(c). Carnival does not challenge this theory of negligence. Since Baker's first theory of negligence is sufficient to state a cause of action, the Court will not rule on this alternative theory of negligence.[1]

---

[1]The Court notes, however, that the state of maritime law on this issue currently is in flux. The majority rule is that a cruise line cannot be held vicariously liable for a doctor's negligence onboard. *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988). In August of 2003, however, the Florida Third Circuit Court of Appeal rejected *Barbetta* and held that a ship's doctor's negligence should be imputed to a cruise line. *Carlisle v. Carnival Corp.*, 864 So.2d 1

Another theory advanced by Baker to support her negligence claim is that Carnival was negligent in failing to investigate fully the offense committed on Baker. Pl. Cmplt. at ¶ 29(d).  As noted by Carnival, several courts have held that no duty to investigate exists. *See Doe v. Celebrity*, 145 F. Supp. 2d 1337, 1346 (11th Cir. 2001) (holding that operator's alleged failure to investigate sexual assault on passenger did not constitute negligence) (citing *York v. Commodore Cruise Line, Ltd.*, 863 F.Supp. 159, 164 (S.D.N.Y. 1994) and *Jaffess v. Home Lines, Inc.*, 1988 WL 42049 at *6 (S.D.N.Y. Apr. 22, 1988)).  Baker argues that this Court should not follow *Doe* because its analysis is limited and the clearly established rule is that one who undertakes a duty to act is obligated to act with reasonable care. *Union Park Memorial Chapel v. Hutt*, 670 So.2d 64, 67-68 (Fla. 1966) (citations omitted).  As discussed above, Baker has stated a cause of action based on her first theory of negligence.  Therefore, at this time the Court will not make a determination as to whether this theory - negligence for failure to investigate - is a viable one, but advises Baker that going forward she should carefully consider whether this theory of negligence is supported by the law.[2]

Lastly, Baker alleges that Carnival was negligent in failing to advise Baker about the actions

---

(Fla. 3d DCA 2003).  One court in the Southern District of Florida, relying in part on *Carlisle*, has also declined to apply the *Barbetta* majority rule. *See Huntley v. Carnival Corp.,* 307 F.Supp.2d 1372, 1374 (S.D. Fla. 2004).  More recently, however, another court in the Southern District of Florida has upheld the *Barbetta* rule. *See Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367 (S.D. Fla. 2005).  There is currently no Eleventh Circuit precedent on this issue, and the *Carlisle* case is pending review before the Florida Supreme Court. *Carnival Corp. v. Carlisle*, 904 So.2d 430 (Fla. 2005).

[2]Carnival argues that even if there was a duty to investigate and Carnival breached that duty, the passenger ticket bars Baker's damages for strictly emotional injuries.  The relevant provision is found at paragraph 17 of the ticket contract.  It provides: "Carnival shall not be liable to the passenger for damages for emotional distress, mental suffering/anguish or psychological injury of any kind . . . except when such damages were caused by the negligence of Carnival and resulted from the same passenger sustaining actual physical injury, or having been at risk of actual physical injury . . . ."  Baker has alleged that she suffered physical injury because she was physically assaulted and raped. Pl. Cmplt. ¶¶ 16-17.  Although she has also alleged that she suffered emotional injuries, those damages are recoverable under the ticket contract because they are a result or component of the physical injuries she allegedly suffered.

she needed to take to involve onshore authorities in the investigation and prosecution of the offense, and in the failure of Carnival's security department crewmembers to safeguard and maintain custody of the rape kit. Pl. Cmplt. at ¶¶ 29(e) and (f). Carnival does not address these theories in its motion to dismiss, except to argue that it reported the allegations to the appropriate authorities in Puerto Rico. As noted above, Baker has sufficiently alleged a negligence cause of action based on another theory of negligence. Therefore, the Court will not dismiss the negligence claim. Baker, however, should carefully consider whether these last two theories are grounds for a negligence cause of action.

### III. Breach of Contract

Baker alleges that Carnival violated the "zero tolerance" policy[3] of the ticket contract it entered into with Baker by failing to report the illegal activity that took place aboard the ship and by enabling the illegal activity of the Hiestands towards Baker. Pl. Cmplt. at ¶¶ 34-36. According to Baker, by reporting the offense only to authorities in Puerto Rico, Carnival did not fulfill its obligation to Baker because the Puerto Rican authorities could not properly investigate the offense since the victims and the perpetrators were not there when the ship docked. *Id.* at ¶ 36.

Carnival seeks to dismiss Baker's breach of contract claim, arguing that there is no explicit provision in the ticket contract guaranteeing safe passage or obligating Carnival to report illegal activity. Carnival argues it fulfilled any obligation it may have had by reporting Baker's allegations of criminal activity to the Puerto Rican authorities.

Maritime law will not imply a duty of safe passage absent a specific contractual provision guaranteeing it. *Doe,* 145 F. Supp. 2d at 1346-47 (dismissing plaintiff's breach of contract claim in

---

[3]The relevant provision provides: "Carnival has a 'zero tolerance' policy towards reports of any illegal activity or behavior by passengers or crew aboard its vessels. Guest agrees to comply with this policy and further acknowledges that Carnival will report any and all alleged instances of illegal activity or behavior to the appropriate law enforcement authorities." Pl. Cmplt., Ex. B, ¶ 10(c).

7

sexual assault case) (citing *Hass v. Carnival Cruise Lines*, 1986 WL 10154 (S.D. Fla. Mar. 20, 1986). Baker has pointed to no provision other than Carnival's zero tolerance policy, for its breach of contract claim. The plain language of that provision, however, does not guarantee a passenger's safe passage, nor does it impose an obligation upon Carnival to report illegal activity. Rather, it sets forth, as a warning to passengers, Carnival's policy of reporting illegal activity. Therefore, Carnival's failure to follow that policy does not create a cause of action for breach of contract.

## IV. Punitive Damages

Baker also seeks punitive damages in this action. As Baker concedes, however, under maritime law punitive damages are precluded in personal injury actions except in cases involving intentional wrongdoing. *In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). Baker has not alleged that Carnival acted intentionally, wilfully or with malice. Accordingly, at this time Baker's request for punitive damages is stricken.

## V. Attorney's Fees

Baker's request for attorney's fees is also inappropriate in this action. Federal maritime law provides that "absent specific federal statutory authorization for an award of attorney's fees, the prevailing party is generally not entitled to those fees." *Garan Inc. v. M/V Aivik,* 907 F.Supp. 397, 399 (S.D.Fla. 1995) (citing *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724 (5th Cir. 1980)).[4] Baker has pointed to no statutory authorization for the award of attorney's fees. Accordingly, Baker's request for attorney's fees is also stricken.

## VI. Conclusion

For the reasons set for above, Carnival's Motion to Dismiss Count I of the Complaint is

---

[4]An exception to this rule exists where bad faith is alleged. *See Noritake*, 627 F.2d at 730 n.5. Baker, however, has not alleged that Carnival acted in bad faith. Therefore, the exception does not apply here.

8

DENIED.  The Motion to Dismiss Count II of the Complaint is GRANTED.  Baker's requests for punitive damages and attorney's fees are STRICKEN.

DONE AND ORDERED in Chambers, Miami, Florida, this 5th day of December, 2006.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record